## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

In re THE VAUGHAN COMPANY, REALTORS.

JUDITH A. WAGNER, Chapter 11 Trustee
of the bankruptcy estate of the Vaughan Company,
Realtors,

            Plaintiff,

    vs.                              Civ. No. 13-631 JCH/KK

MICHAEL DRESKIN, CAROL WILLIAMS,
and ELITE REAL ESTATE, LLC d/b/a
REMAX ELITE,

            Defendants.


### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the *Motion for Withdrawal of Reference* by Defendant Elite Real Estate, LLC d/b/a ReMax Elite ("ReMax").  [Doc. 1]  Defendants Dreskin and Williams do not oppose the motion.  Plaintiff Wagner filed a response opposing the motion [Doc. 3], and Defendant ReMax filed a reply [Doc. 4].  Having considered the pleadings, briefs, and relevant law, the Court concludes that the *Motion for Withdrawal of Reference* should be denied at this time.


### BACKGROUND

The Vaughan Company, Realtors, ("Vaughan") filed a voluntary Chapter 11 bankruptcy petition on February 22, 2010.  On April 29, 2010, Plaintiff Wagner was appointed trustee. Plaintiff filed a Complaint against Defendants on April 15, 2013, asserting a total of ten counts

against the three Defendants.  [Case No. 13-01030-j, Doc. 1]  The Complaint seeks damages for alleged post-petition actions relocating Vaughan's brokers and transferring listings to ReMax.

Vaughan proceeded as a debtor in possession from February 22, 2010, to April 29, 2010. According to the Complaint, Dreskin was a director of Vaughan at all relevant times; Dreskin was appointed interim Chief Executive Officer on March 2, 2010.  The Complaint asserts that on March 25, 2010, Dreskin testified as CEO and part of Vaughan's management team at the first meeting of creditors; Dreskin testified that Vaughan had about 135 brokers and about 240 listings when the petition was filed, and the plan was for Vaughan to continue business throughout the reorganization, with Dreskin continuing as interim CEO.

On April 14, 2010, the United States Trustee's Office filed a motion to appoint a Chapter 11 trustee or to convert to a Chapter 7 bankruptcy.  On April 15, 2010, Dreskin sent an email to Vaughan brokers and staff reporting that there was a motion to convert to Chapter 7, but that "the US Trustee" agreed not to proceed with converting to Chapter 7.  On April 20, 2010, Vaughan's counsel advised the U.S. Trustee's Office that Vaughan's brokers were leaving.  On April 23, 2010, Dreskin sent an email to Vaughan brokers and staff saying that a trustee had been appointed and there was an order to convert to Chapter 7 (which would "shut[] us down as an entity") and recommending that they transfer their licenses to a new company, cancel current listings, and relist with a new company.

On April 23, 2010, Plaintiff Wagner was contacted for the first time by the U.S. Trustee's Office about serving as Chapter 11 trustee.  She was not appointed until April 29, 2010.

The Complaint alleges that, between April 24 and April 26, 2010, and continuing through May 26, 2010, ReMax entered into Independent Contractor Agreements with numerous brokers who had formerly been employed by Vaughan.

2

On April 29, 2010, Dreskin resigned as registered agent for Vaughan, and on April 30, 2010, agreed to continue to serve as qualifying broker for Vaughan while it continued to operate as a debtor in possession. The Complaint alleges that Dreskin had been negotiating with ReMax to become a ReMax broker for several weeks and then, on or about May 15, 2010, Dreskin entered into a co-qualifying broker agreement with ReMax. On May 27, 2010, Dreskin resigned as qualifying broker for Vaughan.

The Complaint alleges that: Dreskin made false statements about earlier appointment of a trustee and conversion to Chapter 7 with the purpose of creating panic and causing brokers to leave Vaughan and relocate to ReMax; in April 2010, Dreskin and Williams negotiated with ReMax to relocate many of Vaughan's brokers to ReMax, in case the bankruptcy was converted to Chapter 7; and before April 20, 2010, while she was still a broker for Vaughan, Defendant Williams canvassed Vaughan's brokers, recruiting them to relocate to ReMax. The Complaint alleges that: some of Vaughan's listings were transferred to ReMax and eventually resulted in commissions to ReMax; Vaughan was prevented from generating revenues because of these relocations, which listings would otherwise have been received by Vaughan; ReMax assisted Dreskin and Williams in causing relocation of listings from Vaughan to ReMax; and as a result Vaughan's plan to continue as a real estate brokerage business was thwarted.

In bankruptcy court, ReMax filed an opposed motion to stay the proceeding pending outcome of ReMax's motion for withdrawal of reference. [Case No. 13-01030-j, Doc. 24 (corrected motion)] The bankruptcy court held that motion in abeyance. [Case No. 13-01030-j, Doc. 71] Plaintiff filed in bankruptcy court a motion for determination that this is a core proceeding. [Case No. 13-01030-j, Doc. 31] The bankruptcy court also held that motion in abeyance. [Case No. 13-01030-j, Doc. 71] A significant amount of discovery has been

conducted in bankruptcy court, over a substantial period of time (Nov. 4, 2013 to Oct. 10, 2014).

[Case No. 13-01030-j, Docs. 43-68, 72-110]

    The Complaint asserts three counts against ReMax:

    Count 1:  Accounting, under 11 U.S.C. § 542
    Count 5:  Tortious interference with contracts (Brokers' listing agreements)
    Count 7:  Unjust enrichment

[Case No. 13-01030-j, Doc. 1]

    The Complaint asserts the following counts against Dreskin and Williams:

    Count 1:  Accounting, under 11 U.S.C. § 542
    Count 2:  Breach of fiduciary duty (Dreskin)
    Count 3:  Aiding and abetting breach of fiduciary duty (Williams)
    Count 4:  Civil conspiracy; conspiracy to breach fiduciary duty (Dreskin & Williams)
    Count 5:  Tortious interference with contracts; broker's listing agreements
              (ReMax, Dreskin, Williams)
    Count 6:  Negligence (Dreskin)
    Count 8:  Disallowance of claims pursuant to 11 U.S.C. § 502, or alternatively, equitable
              subordination of claim pursuant to 11 U.S.C. § 510(c) (Dreskin & Williams)
    Count 9:  Breach of contract (Dreskin & Williams)

[Case No. 13-01030-j, Doc. 1]

    The motion to withdraw the reference was filed only by Defendant ReMax.  Defendants

Dreskin and Williams do not oppose the motion, but do not join in the motion.  [Doc. 1, p. 2]

## LEGAL STANDARDS

    A  federal  district  court  has  nonexclusive  subject  matter  jurisdiction  over  "all  civil

proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. §

1334(b).  District courts are authorized to refer such proceedings to bankruptcy court.  28 U.S.C.

§ 157(a).  The District Court for the District of New Mexico has provided by administrative

order that "all cases under Title 11 and all proceedings arising under Title 11 or arising in or

related to a case under Title 11 are referred to the bankruptcy judges for the district to the extent

permitted by law." *In re Reference to Bankruptcy Judges and Local Bankruptcy Rules*, Misc. No. 84-0324 (D.N.M. 3/19/92).

Congress provided that the bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). The statute provides a nonexhaustive list of core proceedings. 28 U.S.C. § 157(b)(2). "Core proceedings are proceedings which have no existence outside of bankruptcy." *Gardner v. United States* (*In re Gardner*), 913 F.2d 1515, 1518 (10th Cir. 1990) (per curiam); *see Johnson v. Smith* (*In re Johnson*), 575 F.3d 1079, 1082 (10th Cir. 2009). "Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." *Gardner*, 913 F.2d at 1518.

In addition, bankruptcy courts "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and in such cases "shall submit proposed findings of fact and conclusions of law to the district court" to assist the district court in making a final decision after de novo review. 28 U.S.C. § 157(c)(1). "Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court." *Gardner*, 913 F.2d at 1518. "'[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Id.* (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)). A proceeding is related "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *Id.*

In *Stern*, the Supreme Court threw some bankruptcy matters into uncertainty, holding that it was unconstitutional for a bankruptcy court to enter final judgment on a counterclaim that would not necessarily be resolved through adjudication of the proof of claim—even though this was allowed by § 157(b)(2)(C), which designates such a counterclaim as a core proceeding. *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594, 2620, 180 L. Ed. 2d 476 (2011). *Stern* holds that such an exercise of judicial power violates the Constitution:  "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618.  In *Arkison*, the Supreme Court held that on such claims ("*Stern* claims") the bankruptcy court is nevertheless permitted to submit proposed findings of fact and conclusions of law to the district court to be reviewed de novo. *Exec. Benefits Ins. Agency v. Arkison*, ___ U.S. ___, 134 S. Ct. 2165, 2173, 189 L. Ed. 2d 83 (2014) (explaining that the severability provision of the statute permits *Stern* claims to proceed in the same way as non-core proceedings under § 157(c)).

The district court is to decide a motion for withdrawal of reference to the bankruptcy court.  Fed. R. Bankr. P. 5011(a).  Withdrawal of the reference may be mandatory or permissive. The district court is required to withdraw the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  The district court has broad discretion to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  *Id*.; *Cook v. Eastern Savings Bank* (*In re Cook*), No. CIV 09-803 JCH/CEG, 2010 WL 1734737, *3 (D.N.M. 2010); *Albert v. Site Mgmt., Inc.*, 506 B.R. 453, 455 (D. Md. 2014).  The

burden of showing cause is on the party moving for permissive withdrawal.  *Cook*, 2010 WL 1734737, *3; *In re Temecula Valley Bancorp, Inc.*, ___ B.R. ___, 2014 WL 7150731, *2 (C.D. Cal. 2014).

## DISCUSSION

ReMax asks the Court to withdraw the reference to bankruptcy court, arguing that the claims asserted against ReMax are state law claims on which the bankruptcy court cannot enter final judgment.  [Doc. 1]  ReMax also makes a cursory assertion that these claims are not even "related to" the bankruptcy case.  Much of ReMax's argument, however, is directed to fraudulent conveyance claims rather than to the issues relevant in this case.

Plaintiff argues that the claims against ReMax are core claims and that, even if a jury trial must be held in this Court and the bankruptcy court cannot enter final judgment at any event, the Court should defer withdrawal of the reference.  [Doc. 3]  Plaintiff asks the Court to allow the bankruptcy court to decide all pretrial matters and to withdraw the reference if and when the proceeding is ready for jury trial.

Withdrawal of the reference is not mandatory in this proceeding, because resolution of the proceeding does not require significant interpretation of federal non-bankruptcy law.  *See* 28 U.S.C. § 157(d); *Cook*, 2010 WL 1734737, *2.  The Complaint states only non-federal causes of action.

For permissive withdrawal of the reference, factors for the Court to consider include: "'(1) whether the proceeding is core or non-core; (2) judicial economy; (3) uniformity in bankruptcy administration; (4) economical use of the debtors' and creditors' resources; (5) reduction of forum shopping and confusion; (6) expediting the bankruptcy process; and (7) the presence of a jury demand.'"  *Cook*, 2010 WL 1734737, *3 (quoting *Prudential Sec. Credit Corp.*

*v. Pacific Pointe Escrow, Inc.* (*In re Apponline.com, Inc.*), 303 B.R. 723, 726 (E.D.N.Y. 2004)). The Court could withdraw the entire case or just the claims against ReMax. *See* 28 U.S.C. § 157(d) (providing that "district court may withdraw, in whole or in part, any case or proceeding referred"). Having considered these and other relevant factors, the Court concludes that ReMax has not carried its burden to show cause justifying withdrawal at this time. *See Cook*, 2010 WL 1734737, *3.

### (1) Whether the proceeding is core or non-core

A determination that the claims at issue are not core proceedings weighs in favor of withdrawing the reference. *Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co.* (*In re Centrix Fin., LLC*), 2011 WL 63505, *5 (D. Colo. 2011) (unpublished). Since the bankruptcy court cannot enter final judgment on non-core proceedings, the proceeding has to return to the district court at some point.

Core proceedings are those which "arise under" or "arise in" title 11. *Personette v. Kennedy* (*In re Midgard Corp.*), 204 B.R. 764, 771 (B.A.P. 10th Cir. 1997). A proceeding "arises under" title 11 if it asserts a cause of action created by the statute, such as an exemption claim or avoidance action. *Id.* A proceeding "arises in" a bankruptcy case if it could not exist outside of a bankruptcy case, but is not a cause of action created by the Bankruptcy Code. *Id.*

Plaintiff argues that this is a core proceeding under § 157(b)(2)(A), (B), and (O). Although the language of these subsections appears to be broad, it must be interpreted under the Tenth Circuit tests for core and "related to" jurisdiction. *See Gardner*, 913 F.2d at 1518. The claims for tortious interference with contracts and unjust enrichment are not "proceedings which have no existence outside of bankruptcy"; instead, these actions are state law claims that could proceed in another court. *See Gardner*, 913 F.2d at 1518.

8

Plaintiff argues that the Complaint against ReMax involves a core proceeding under § 157(b)(2)(B):  "allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."  Plaintiff observes that the Complaint requests disallowance or, alternatively, subordination, of any claims against the bankruptcy estate by Dreskin and Williams.  [Doc. 3, p. 5]  ReMax responds that it has not filed a claim with the estate.  [Doc. 4, p. 3; Case No. 13-01030-j, Doc. 36, p. 5]  In addition, it appears that neither Dreskin nor Williams has filed a claim.  [Case No. 13-01030-j, Doc. 37]  Thus § 157(b)(2)(B) is not relevant.

Plaintiff argues that the Complaint against ReMax involves a core proceeding under § 157(b)(2)(O):  "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."  Plaintiff asserts that the proceeds of closing real estate sales with ReMax, which would otherwise have closed with Vaughan, constitute "assets of the estate."  ReMax responds that such commissions, as merely potential future income, do not constitute "assets of the estate" so as to fall under § 157(b)(2)(O).  The Court agrees with ReMax on this point.  Plaintiff again takes such a broad view of the statutory subsection that it would cover many proceedings that are only "related to" the bankruptcy case.  The Fifth Circuit observed that, despite the broad language of § 157(b)(2)(O), a broad reading to this subsection is not warranted:  "[O]therwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings."  *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 95 (5th Cir. 1987).  The Tenth Circuit adopted the test for "related to" jurisdiction set forth by the

Fifth Circuit in *Wood*.  *Gardner*, 913 F.2d at 1518.  Under the Tenth Circuit test, the claims of tortious interference and unjust enrichment cannot be core proceedings because they have an "existence outside of bankruptcy," "do not depend on the bankruptcy laws for their existence," and "could proceed in another court."  *Gardner*, 913 F.2d at 1518.

Plaintiff argues that ReMax's alleged post-petition acts are "matters concerning the administration of the estate" under § 157(b)(2)(A), because ReMax disrupted, interfered with, and undermined the bankruptcy estate's operations.  Because of ReMax's actions, Plaintiff asserts, "the bankruptcy estate prematurely ceased operating its residential real estate brokerage business and lost thousands of dollars in commissions."  [Doc. 3, p. 3]  This assertion shows that the claims are "related to" the title 11 case.  But Plaintiff's argument again takes too broad a view of what is designated a core proceeding under § 157(b)(2)(A).  Accepting Plaintiff's view would again lead to including virtually "the entire range of proceedings" as core proceedings under the statute.  *See Wood*, 825 F.2d at 95.  Applying the Tenth Circuit's test, the claims for tortious interference and unjust enrichment cannot be core proceedings.  *See Gardner*, 913 F.2d at 1518.  Although the cause for the alleged interference with contracts is asserted to be the bankruptcy case, the claims against ReMax nevertheless constitute state law claims that "have [an] existence outside of bankruptcy" and "in the absence of a bankruptcy petition, could have been brought in a district court or state court."  *Id*.

Although the claim for an accounting under 11 U.S.C. § 542 appears to be a core proceeding, such a claim does not arise until after a determination that there is estate property that the trustee may use, sell, or lease.  *See* 11 U.S.C. §§ 541-542.  The claim here is contingent upon successful prosecution of the state law claims; therefore, the Court concludes it does not support Plaintiff's argument that this is a core proceeding.  [Doc. 3, p. 5]  At any event, the

presence of one core claim would not transform non-core claims into core claims. *See Longview Power, LLC v. First Am. Title Ins. Co.* (*In re Longview Power, LLC*), 515 B.R. 107, 114 (Bankr. D. Del. 2014).

Because the list of core proceedings in § 157(b)(2) is nonexhaustive, Plaintiff also argues generally that the claims "arise in" or "arise under" title 11. But the *Gardner* test again leads the Court to conclude that tortious interference and unjust enrichment are not core proceedings.

The Court concludes, however, that the claims against ReMax are "related to" the title 11 case, because the outcome of the proceeding "could conceivably have [an] effect on the estate being administered in bankruptcy." *Gardner*, 913 F.2d at 1518. "Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995). Courts have adopted a generous definition of "related to" jurisdiction, recognizing the need to allow expeditious and efficient administration of all matters connected to the debtor's estate. *Yukon Energy Corp. v. Brandon Inv., Inc.* (*In re Yukon Energy Corp.*), 138 F.3d 1254, 1259 (8th Cir. 1998) (stating that "related to" jurisdiction is broad, including even a mere contingent or tangential effect); *Canal Corp. v. Finnman* (*In re Johnson*), 960 F.2d 396, 403 (4th Cir. 1992) (adopting expansive definition of "related to" jurisdiction, including matters unless there is only an "extremely tenuous connection to the estate"); *Corliss Moore & Assocs., LLC v. Credit Control Servs., Inc.*, 497 B.R. 219, 228 (E.D. Va. 2013) (same); 1–3 *Collier on Bankruptcy* ¶ 3.01[3][e][iii] (Myron M. Sheinfeld, Fred T. Witt & Milton B. Hyman, 16th ed. 2011) (same).

A proceeding is "related to" the bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate"—i.e., "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and

administration of the bankruptcy estate."  *Gardner*, 913 F.2d at 1518.  The allegations of the Complaint against ReMax concern the time between filing of the petition and appointment of Plaintiff as trustee.  Plaintiff asserts that ReMax interfered with Vaughan's ability to reorganize by causing Vaughan to prematurely cease operating its real estate business and by causing Vaughan to be deprived of revenue in the form of additional commissions.  [Doc. 3, pp. 3-4; Case No. 13-01030-j, pp. 8-9]  The Complaint alleges that ReMax's actions had an impact on the handling and administration of the bankruptcy estate.  The Court concludes that the claims against ReMax are "related to" the title 11 case.  *See Yukon Energy Corp.*, 138 F.3d at 1259-60 (concluding that there was "related to" jurisdiction over fraud claim because fraud impaired debtor's ability to reorganize, diminished value of debtor's assets, and could lead to debtor's recovery of damages); *Artra Group, Inc. v. Salomon Bros. Holding Co.* (*In re Emerald Acquisition Corp.*), 170 B.R. 632, 640 (N.D. Ill. 1994) (stating that proceeding "relates to" bankruptcy if it affects amount of property available for distribution or allocation of property among creditors).

Thus the bankruptcy court has authority to hear these claims, although it cannot enter final judgment.  *See* 28 U.S.C. § 157(c)(1).  The fact that the claims are not core proceedings weighs in favor of withdrawing the reference, but this factor is not dispositive.  *Centrix Fin. Liquidating Trust*, 2011 WL 63505, *5.  The Court must consider and weigh all of the relevant factors.

### (2)  Judicial economy

The bankruptcy court has already devoted significant judicial resources to these claims and is familiar with the factual background.  Having denied Plaintiff's motion for a stay, the bankruptcy court has continued to oversee pretrial matters including discovery.  *See* Fed. R.

Bankr. P. 5011(c) (providing that filing of motion for withdrawal shall not stay administration of the case or any proceeding before the bankruptcy judge).  Judicial economy and efficiency are furthered by making use of the bankruptcy court's unique knowledge of title 11 and familiarity with the bankruptcy case and with this proceeding; it makes sense to allow the bankruptcy court to retain jurisdiction until the proceeding is ready for trial.  *See Sigma Micro Corp. v. Healthcentral.com* (*In re Healthcentral.com*), 504 F.3d 775, 787 (9th Cir. 2007); *Centrix Fin. Liquidating Trust*, 2011 WL 63505, *4.

ReMax asserts that this proceeding "will entail a detailed analysis" of "numerous decision[s] by numerous homeowners and real estate brokers" regarding cancellation of listing agreements with Vaughan and relocation to ReMax.  [Doc. 4, pp. 2-4]  This assertion suggests that discovery regarding many different homeowners and brokers will be required; although it is not clear how many of them will be involved in discovery, Dreskin testified that at the time the petition was filed Vaughan had 240 listings and 135 brokers, many of whom relocated to ReMax.  The necessity for further extensive discovery militates in favor of leaving the proceeding in bankruptcy court, which has already presided over much discovery.  *See Centrix Fin. Liquidating Trust*, 2011 WL 63505, *6 (observing that requirements of protracted discovery and pretrial court oversight support leaving case in bankruptcy court, which is already familiar with the issues).  The bankruptcy court's experience with the proceeding, knowledge of the facts, and familiarity with bankruptcy law will undoubtedly be helpful in handling further discovery and ruling upon other pretrial issues.  *See Severson*, 190 B.R. at 656.

The Court concludes that the bankruptcy court is in a better position to continue to oversee the discovery process and other pretrial issues.  Depending on the course of the proceeding, proposed findings and conclusions from the bankruptcy court could provide

significant assistance to this Court in making final decisions.  The Court determines that the most efficient approach is to leave the case in bankruptcy court at this time.

### (3)  Uniformity in bankruptcy administration

The potential necessity for further extensive discovery also favors leaving the proceeding in bankruptcy court; there may be common factual and legal issues regarding discovery so that continuing to have the bankruptcy court handle the proceeding pretrial will promote uniformity. In general, uniformity of administration is furthered when bankruptcy courts handle—at least initially—factual and legal issues which may also arise in the bankruptcy action.  *Albert*, 506 B.R. at 460.  The Court finds that this factor does not support immediate withdrawal of the reference.

### (4) Economical use of debtors' and creditors' resources

The fourth factor, like the second factor, supports denial of withdrawal at this time.  The parties have been pursuing discovery under the bankruptcy court's supervision; the Court concludes that it will be more economical to continue the process in bankruptcy court.

### (5) Reduction of forum shopping and confusion

"Allowing the pretrial matters of the adversary case to proceed in bankruptcy court discourages forum shopping."  *Disbursing Agent v. Severson* (*In re Hardesty*), 190 B. R. 653, 655 (D. Kan. 1995).  "That defendants might *prefer* a different forum is of no moment . . . ." *Centrix Fin. Liquidating Trust*, 2011 WL 63505, *6.  This factor weighs in favor of denying immediate withdrawal of the reference.

### (6)  Expediting the bankruptcy process

The bankruptcy process would be expedited by leaving the case in bankruptcy court at this time.  As observed above, the bankruptcy court is familiar with the case and this proceeding,

and has already devoted significant resources to it. Discovery has been continuing, and disruption by transfer to this Court would not expedite the pretrial proceedings.

**(7)  Presence of a jury demand**

ReMax has made a jury demand. [Case 13-01030-j, Doc. 21] The bankruptcy court may not conduct a jury trial without consent of all parties, and ReMax does not consent. [Doc. 1-1, pp. 2, 9] *See* 28 U.S.C. § 157(e). Under these circumstances, any trial must be held in this Court. *See* Fed. R. Bankr. P. 9015(b). While a right to jury trial may constitute cause for withdrawal of the reference, it is within the Court's discretion to determine when to withdraw the reference. *See Centrix Fin. Liquidating Trust*, 2011 WL 63505, *4. "Universally[, ] courts have all reached the same holding, that is, a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court." *Healthcentral.com*, 504 F.3d at 787 (citing numerous cases). The bankruptcy court can handle pretrial matters—including continuing the supervision of discovery, conducting pretrial conferences, and other pretrial matters that may arise. *See Healthcentral.com*, 504 F.3d at 788; *Albert*, 506 B.R. at 460.

## CONCLUSION

ReMax has failed to convince the Court that the relevant factors support immediate withdrawal of the reference. Given the bankruptcy court's greater familiarity with the issues involved, and with this particular proceeding as the bankruptcy court has to this date presided over discovery and other matters, the Court concludes that the best course is to delay withdrawal of the reference so that the Court may continue to benefit from the bankruptcy court's expertise and familiarity with the case. *See In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 267-68 (S.D.N.Y. 2012); *Albert*, 506 B.R. at 459 n.3; *In re Appalacian Fuels, LLC*, 472 B.R. 731, 745

(E.D. Ky. 2012).  Even after discovery is complete, the bankruptcy court may continue to handle some matters and continue to benefit this Court.  *See*, *e.g.*, *In re Madison Bentley Assocs., LLC*, 474 B.R. 430, 440 (S.D.N.Y. 2012) (denying withdrawal of reference after completion of discovery because it was efficient and beneficial to receive recommended findings and conclusions from bankruptcy court on pending summary judgment motion).

Permissive withdrawal of the reference may also be effected on the Court's own motion. *See* 28 U.S.C. § 157(d).  Although Defendants Dreskin and Williams did not join in the motion for withdrawal, the Court has also considered the claims against Dreskin and Williams in making its decision.  For the same reasons discussed above in relation to the claims against ReMax, the Court concludes that withdrawal of the reference is not warranted at this time.

The bankruptcy court will continue to handle this proceeding pretrial, and to enter proposed findings and conclusions in future, if appropriate.  If and when the proceeding is ready for trial, the bankruptcy court shall so certify to this Court and submit a proposed order withdrawing the reference, in accordance with Local Bankruptcy Rule 9015-1.

**IT IS THEREFORE ORDERED** that Defendant ReMax's *Motion for Withdrawal of Reference* [Doc. 1] is **DENIED without prejudice** pending pretrial proceedings before the bankruptcy court.  The bankruptcy court shall complete all pretrial matters in preparation for a jury trial before this Court.  The parties and the bankruptcy court will then so notify the Court. The matter will be withdrawn at that time and the action reopened.  Final pretrial conference and jury trial dates will then be set by this Court.

**IT IS FURTHER ORDERED** that this case is **ADMINISTRATIVELY CLOSED**.

_____
**UNITED STATES DISTRICT JUD**

16